## Love, Savage & Co. *v.* McComas & Cloon—On a Rule against the surety on the bond for the release of property attached.

A judgment which decrees that a writ of attachment under which property has been seized be quashed, and that the bond given for the release of property attached under the writ be cancelled and annulled, is a judgment in favor of the surety upon the bond thus cancelled and annulled, and will become final and irrevocable by the lapse of two years from its date without any appeal being taken therefrom.

A judgment afterwards rendered on appeal, in subsequent proceedings in the same suit, by which the attachment is maintained, will not affect the surety who was not a party to the appeal.

APPEAL from the Second District Court of New Orleans, *Morgan*, J.

*Duncan & McConnell*, for plaintiff on rule. *Durant & Hornor*, for defendant in rule and appellant.

Buchanan, J. The facts and dates are recapitulated in the opinion heretofore delivered in this cause.

A re-hearing having been granted, we have come to the conclusion that the plea of *res judicata*, interposed by the appellant in this court, was well taken.

26

LOVE
v.
McCOMAS

The judgment of the District Court, rendered on the 15th and signed on the 20th December, 1853, decreed, " that the second writ of attachment issued herein, and under which the steamboat Lewis Whiteman has been seized, which writ issued on the 29th May, 1852, be quashed and set aside, and that the bond given for the release of the property attached under said writ be cancelled and annulled."

This was a judgment in favor of the appellant, who was the surety upon the bond which was thus cancelled and annulled. This judgment became final and irrevocable by the lapse of two years from its date, without an appeal taken therefrom. Indeed it has never been appealed from to this day.

The appellant was not a party to the subsequent proceedings in the suit of *Love, Savage & Co.* v. *McComas & Cloon ;* to the final judgment of the District Court on the merits in that case, rendered on the 7th February, 1856 ; to the appeal taken by plaintiffs from that judgment ; and consequently not a party to the proceedings in the Supreme Court upon such appeal. As to this appellant, the judgment of this court of the June term of 1856, upon which the appellees rely, must be considered as *res inter alias acta.*

The omission of appellant to make a party who is interested in maintaining a judgment, party to the appeal, might have been the means of dismissing the appeal, if brought to the attention of the court, previous to judgment on the merits. But the neglect of the appellee to do so cannot have the effect of enabling the appellant to profit by his own omission, and to enforce a judgment of reversal against one who was not party to such judgment of reversal.

It is, therefore, adjudged and decreed, that our former judgment in this case, of the 23d November, 1857, be avoided and annulled, and that there be judgment reversing that which is appealed from, and in favor of the appellant, *Bennett P. Voorhies*, and against the appellees, *Love, Savage & Co.*, with costs in both courts.

VOORHIES, J., recused himself, on account of relationship to one of the parties.

MERRICK, C. J., dissenting. The original opinion of this court on the rule taken against the surety upon the bond for the release of the property attached, appears to me to be sustained by abundant authority. I have not heard or seen any argument or authority advanced on the re-hearing, which creates any doubt upon my mind of the correctness of that decision, and hence I do not feel at liberty to assent to the opinion of my colleagues, in part overruling the same. Indeed I do not understand the opinion of my colleagues to controvert the doctrine that all interlocutory decrees, as *between the parties* to the appeal, are open to revision of this court, on an appeal from the final judgment, although such interlocutory orders may have been rendered more than one year previous to the final trial. A contrary doctrine, it appears to me, would not only be in conflict with the Code of Practice, but with many decisions of this court. See C. P. 538, 544, 546 ; 12 La. 150, *Vanwickle* v. *Flecheaux ; Collerton* v. *McCleary*, 7 La. 429 ; *Kræulter* v. *Bank United States*, 11 Rob. 163; *McDonogh* v. *Calloway*, 7 Rob. 444 ; *Park* v. *Porter*, 2 Rob. 344 ; *Crane* v. *McGrew*, 4 An. 307.

But if I understand correctly the opinion enunciated, it is that the interlocutory judgment of the 20th of December, 1853, was a judgment in favor of the surety on the bond, as well as the party to the suit, and that as such he ought to have been made a party to the appeal, and not having ·been made such party *as to him* the judgment is still unreversed. For it cannot, I think, be maintained for a moment, that the interlocutory order, *as to the defendant*, was not brought

up by the appeal from the final judgment; for we reversed the judgment and reinstated the attachment.

It remains, then, only to consider whether the surety on the bond was a necessary party to the appeal, and whether the judgment could have the force of the thing adjudged as to him, notwithstanding the appeal. In the case of these plaintiffs against the defendant in the rule, it appears to me, this court has recently decided the contrary. See *Love, Savage & Co.* v. *B. P. Voorhies.*

The surety binds himself on the release of the property attached, that he will satisfy, to the extent of the value of such property, such judgment as may be rendered against the defendant in the suit pending. C. P. 259 ; Act 1852, p. 155. It is true, therefore, that he is interested in the interlocutory judgment, and he has the like interest in the final judgment, for if the final judgment be in favor of the defendant, the surety is not bound.

But this interest, in the absence of an express statute, does not make the surety a party to the suit. He would not be heard to object to evidence, or permitted to file a motion to dissolve, or take any steps in the proceeding. He is no more a party to the suit than the surety on the appeal bond is a party to the appeal.

The statute of 1839, p. 162, sec. 3, has provided the mode of rendering him liable. It requires a rule to be taken against him upon the bond after the return of *nulla bona* on an execution on the judgment against his principal to show cause why judgment should not be rendered against him upon the bond. On this rule, the decree must ascertain the value of the property attached, and the judgment is not to be beyond such value. I think it is, therefore, quite clear, that the surety on the bond releasing the attachment, unlike the surety on the injunction bond, is not a party to the suit, although he may be interested in the interlocutary orders as well as final decree.

A contrary doctrine would lead to much unnecessary expense in all proceedings of this kind, and would increase greatly the docket of this court.

---

## OVERRULED OPINION.

MERRICK, C. J. The present proceeding is a rule taken against a surety to a bond given for the release of property attached to render him liable after the return of *nulla bona* on the execution.

The suit in the Sixth District Court pleaded as *lis pendens* in bar of this proceeding appears to be founded upon another bond given by the same parties, for the release of other property attached in the above entitled cause. Although it has for its object the security of the same debt, and would, therefore, be discharged by the payment of the bond sought to be inforced on this rule, or by the payment of the original judgment, still it is not in fact the same cause of action, *super idem corpus et eandem eausam petendi.*

It is upon a different instrument, though collateral to the same principal debt. Had it been signed by different sureties there could be no question that the plea could not avail, and we do not conceive that it makes any difference that the two bonds are signed by the same surety. The exception of *lis pendens* was, therefore, properly overruled.

On a rule taken by the defendants upon the plaintiff, in the original action, to show cause why the writ of attachment issued 29th May, 1852, (under which the bond signed by the defendant in the rule was given,) should not be quashed and

set aside, it was ordered that the rule be made absolute, and that the bond for the release of the property attached be cancelled and annulled. This order was signed by the Judge on the 20th December, 1853. Final judgment was not rendered in the case until Feb. 12th, 1856, and the appeal was taken the nineteenth day of the same month, it being more than two years after the interlocutory decree. On these facts the appellant contends by counsel, that the order of 20th of December, 1853, was one which worked irreparable injury to the plaintiffs, and that "may" in Art. 566, C. P., is to be construed must, and inasmuch as plaintiffs did not appeal from said order in one year, that it has the force of the thing adjudged, which is now pleaded in bar of the present proceeding.

We have not supposed that the right of the Supreme Court to pronounce in their final decree upon all interlocutory matters and orders, entertained and decided at any time during the progress of the cause by the lower court, was at all doubtful, whether those orders did or did not produce some inconvenience to the parties which the final decree could not remedy. But this point is pressed upon the court with such earnestness by defendants' counsel, that we will look into the authorities on the subject. The Code of Practice, after dividing judgments into interlocutory and final, declares that "Interlocutory judgments do not decide on the merits; they are pronounced on preliminary matters in the course of the proceedings." Art. 538.

" Definitive or final judgments are such as decide all the points in controversy between the parties. Definitive judgments are such as have the force of *res judicata.*" C. P. 539. The maxim of the French law is *ab interlocutorio potest discedere.* Bousquet, verbo Appeal.

Savigny, in speaking of the effect of a final decree, says, that every decree which is subject to further proof or confirmation, must be looked upon as a preparatory decree, or one of the many steps in the course of a suit, which are designed to lead to a final and permanent judgment. 6 Sav. pp. 296, 297, sec. 285, Berlin edition.

Chief Justice Taney, in 16 Howard, p. 85, says " The counsel for the appellants, however, objects to the decree of dismissal, because it was made at the argument upon the exceptions to the master's report, and is contrary to the opinion on the merits, expressed by the court in its interlocutory order. But this objection cannot be maintained. The case was at final hearing at the argument upon the exceptions, and all of the previous interlocutory orders, in relation to the merits, were open for revision and under the control of the court. This court so decided when the former appeal hereinbefore mentioned was dismissed for want of jurisdiction. And if the court below, upon further reflection or examination, change its opinion after passing the order, or found it was in conflict with the opinion of this court, it was its duty to correct the error. The Circuit Court, on this occasion, has properly done so, and the decree of dismissal must be affirmed, with costs."

In the case of *Thompson* v. *Mylne* it was held by this court, that an order of this court remanding a cause for further proceedings in the partition of property could not be considered as a final decree upon those rights of the parties not specifically adjudicated and closed by the decree itself. The court says, " It is a preparatory decree prescribing the manner of proceeding deemed necessary by the court to arrive at a final decision, and necessarily under its control until that decision is made. 4 An. 211. The plea of *res judicata,* therefore, cannot avail the defendant.

The final decree in the original suit of *Love, Savage & Co.* v. *McComas & Cloon*, reversed the judgment of the lower court, and rendered one in favor of the plaintiffs, wherein the validity of the attachment of 29th May, 1852, was virtually recognized. That decree must have its effect, and the judgment of the lower court on the rule must be affirmed.

Judgment affirmed.